# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| CHRISTINE E. HEMBERGER, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 4:12CV00070 |
| | ) |
| NORTH EAST COMMUNITY ACTION | ) |
| CORPORATION; | ) |
| | ) |
| DONALD PATRICK, in his official capacity | ) |
| as Executive Director of  North East Community | ) |
| Action Corporation; | ) |
| | ) |
| LINCOLN COUNTY PUBLIC HOUSING | ) |
| AGENCY; | ) |
| | ) |
| LYNDON BODE, in his official capacity | ) |
| as Board Chairman /Presiding Commissioner of the | ) |
| Lincoln County Public Housing Agency; | ) |
| | ) |
| COUNTY OF ST. CHARLES, MISSOURI; | ) |
| | ) |
| STEVE EHLMANN, in his official capacity | ) |
| as County Executive for the County of St. Charles, | ) |
| Missouri, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### A.  INTRODUCTION

On August 31, 2011, Defendant North East Community Action Corporation ("NECAC"), acting on behalf of the Lincoln County Public Agency ("LCPHA") and the County of St. Charles, Missouri ("St. Charles County") notified Plaintiff that it was terminating Plaintiff's rental assistance under the Section 8 Housing Choice Voucher

Program ("Section 8 Voucher Program") and denying her request to port her Section 8 Voucher to St. Charles County  because of her "recent arrests for Possession of Marijuana and …Possession of a Controlled Substance".  See Declaration of Christine Hemberger ("Declaration") ¶ 16, Exh. A.  According to a FBI criminal background check (the "Arrest Record") which St. Charles County had ordered when Plaintiff sought to port her Voucher, the arrests occurred on  April 29, 2011 and June 17, 2011.

Plaintiff requested an informal hearing to appeal NECAC's decision.  At the administrative hearing held on Setember 22, 2011, she testified that she had never been formally charged or prosecuted for the arrest charges and was innocent.  Declaration ¶ 21. Although NECAC presented no contrary testimony, the hearing officer, in a September 26, 2011 decision, upheld the termination of Plaintiff's Section 8 because the Arrest Record provided by Defendant NECAC listed the arrests in question, and Plaintiff did not "provide any evidence other than her denial that the charges were entered in error." See Declaration ¶ 23, Exh. C.

The Arrest Record states that there is "No Record of Criminal Conviction".  It also cautions that:

**"An individual should be presumed not guilty of any charge/arrest for which there is no final disposition stated on the record or otherwise determined."**  See Complaint, Exh. B (emphasis added).[1]

Under the United States Housing Act and its implementing regulations, Defendants must prove by "a preponderance of the evidence" that Plaintiff Hemberger engaged in the

---

[1]   The Winfield Chief of Police has also informed NECAC that no charges were filed or pending with respect to the June 17, 2011 arrest and that the State Attorney had no intention of filing any charges "due to lack of evidence." See Declaration, ¶ 20, Exh. B.

alleged criminal drug related activity in order to terminate her Section 8 assistance. 24 C.F.R. §§ 982.553(c).  Defendants presented no such evidence.  The Arrest Record merely shows that Plaintiff was arrested – not that she committed the alleged offenses.  Further the hearing officer impermissibly shifted the burden of proof to Plaintiff when he ruled in favor of Defendants because "she did not provide any evidence other than her denial that the charges were entered in error."

Defendants' actions violate the United States Housing Act, 42 U.S.C. §§ 1437 *et seq;* the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983; and the Missouri Administrative Procedure Act § 536.150.   Ms. Hemberger cannot afford her rent without assistance under the Section 8 Voucher Program and is at imminent risk of being evicted and rendered homeless.  She seeks a temporary restraining order and preliminary injunction compelling Defendants to immediately reinstate her Section 8 assistance and permit her to port her voucher to St. Charles County, Missouri.  She also seeks to enjoin defendants NECAC and LCPHA from enforcing LCPHA's Administrative Plan which illegally authorizes termination of assistance on the mere basis of an arrest.

## STATEMENT OF FACTS

1.     Plaintiff Hemberger, age 31, is a single mother who has no income other than Temporary Assistance for Needy Families ("TANF") in the amount of $336 per month. She receives food stamps in the amount of $669 per month. Declaration ¶¶ 2,4.

2.     Ms. Hemberger rents the premises at 222 8th Street, Apartment 15, Winfield, Missouri ("the Unit") pursuant to a lease with Maco Management.  Declaration ¶ 2.

3.     Ms. Hemberger moved to the Unit in approximately September 2009.  Declaration ¶ 3.

4.      In October 2010, Ms. Hemberger obtained a Section 8 Voucher from NECAC at the LCPHA.  Declaration ¶ 5.

5.      Ms. Hemberger applied the Section 8 assistance from NECAC to the Unit she was already renting from Maco Management.  Declaration ¶ 6.

6.      NECAC set Ms. Hemberger's rental portion at $34.00 per month.  Under the Section 8 Program, a tenant's rent is based on the participant family's income and composition.  Declaration ¶ 7.

7.      Under the Section 8 Program, NECAC paid Maco Management the difference between Ms. Hemberger's portion of the rent and the contract rent of $490 per month. Declaration ¶¶ 8, 9.

8.      NECAC stopped paying their HUD subsidized portion of the rent effective September 30, 2011.  Declaration ¶ 10.

9.      In July 2011, Ms. Hemberger applied to NECAC for a Section 8 moving voucher and received her moving voucher packet.  Declaration ¶ 11.

10.     Ms. Hemberger intended to move to St. Charles County, Missouri.  Ms. Hemberger found a prospective unit and the prospective landlord completed the moving voucher packet.  Declaration ¶ 12.

11.     Ms. Hemberger then took the completed moving voucher packet to the NECAC office in O'Fallon in St. Charles County.  Declaration ¶ 13.

12.     Defendants NECAC and St Charles County (through its commission known as SCCHAP) required Ms. Hemberger to submit to finger printing to obtain an criminal background check. Declaration ¶ 14.

13.     Ms. Hemberger was finger printed at the St. Charles County Sheriff's Department in O'Fallon, Missouri.  Declaration ¶ 15.

14.     On August 31, 2011, Defendant NECAC notified Ms. Hemberger that it was terminating her assistance under the Section 8 Voucher Program stating "as a result of your recent arrests for possession of marijuana and possession of a controlled substance your assistance will be terminated effective September 30, 2011…These arrests disqualify you for housing in St. Charles also."  See "End of Participation Termination of Family Assistance" Notice (the "Termination Notice"), Declaration ¶ 16, Exh. A.

15.     The arrests referenced in the Termination Notice occurred on April 29, 2011 and June 17, 2011.  On April 29, 2011, Ms. Hemberger was arrested by the Lincoln County Sheriff's Department for alleged "possession of up to 35 grams of marijuana."  On June 17, 2011, Ms. Hemberger was arrested by the Winfield Police Department for alleged "possession of a controlled substance."  Declaration ¶ 17.

16.     Ms. Hemberger is innocent of these charges and neither arrest has ever resulted in any criminal prosecution or conviction.    Declaration ¶ ¶18, 19.

17.     Jim Johnson, the Chief of the Winfield Police Department, informed NECAC by letter dated September 29, 2011 that no criminal charges were filed in connection with Ms. Hemberger's June arrest and that the State Attorney did not intend to file charges "due to the lack of evidence." See Declaration ¶ 20, Exh. B.

18.     Ms. Hemberger timely requested an informal hearing which was held September 22, 2011.  Ms. Hemberger told the hearing officer that she was innocent of the alleged crimes and that she was never formally charged or prosecuted in connection with the April

and June arrests.   After the hearing, Ms. Hemberger also provided the hearing officer with a copy of Chief Johnson's letter. Declaration ¶ 21.

19.     No evidence of actual illegal drug activity, criminal drug prosecution or criminal drug conviction by Ms. Hemberger was presented by NECAC at the hearing. The sole evidence relied upon by NECAC and the hearing officer to terminate Ms. Hemberger's Section 8 assistance was the Arrest Record containing information about her two arrests on April 29, 2011 and June 17, 2011. Declaration ¶ 22.

20.     On September 26, 2011, the hearing officer affirmed the termination of Ms. Hemberger's Section 8 assistance stating that, "[a]s drug related arrests and or convictions invalidate housing eligibility, I find sufficient evidence was presented to substantiate violation of the requirements of the NECAC program.   The termination of assistance should be upheld."   See Declaration ¶ 23, Exh. C.

21.     On September 27, 2011, NECAC notified Ms. Hemberger that LCPHA would proceed with the termination of her Section 8 assistance effective September 30, 2011.  See Declaration ¶ 24, Exh. D.

22.     At all relevant times to this action Ms. Hemberger has remained financially eligible for, and in need of, housing assistance under the Section 8 Voucher Program.  As a result of the termination of Ms. Hemberger's Section 8 assistance, Maco Management has not received the full contract rent for the Unit since September 30, 2011. Declaration ¶ 25.

23.     Ms. Hemberger has no adequate remedy at law and will suffer irreparable harm if her assistance under the Section 8 Voucher Program is not immediately reinstated. Declaration ¶ 27.

24.     Without maintenance of her Section 8 assistance, Ms. Hemberger's monthly income of $336 is insufficient to enable her to afford the monthly rent for her current home or to be able to locate affordable alternate housing.  Declaration ¶ 26.

## B.  ARGUMENT

### I.  STANDARD FOR PRELIMINARY INJUNCTION

Rules 65(a) and 65(b) of the Federal Rules of Civil Procedure provide for the issuance of preliminary relief.  The Eighth Circuit announced its standard for preliminary relief in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981)(en banc):

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

See also Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S.Ct. 365 (2008); Kansas City Southern Transport Co., Inc. v. Teamsters Local Union # 41, 126 F.3d 1059, 1066 (8th Cir. 1997). The Eighth Circuit has instructed that, in considering the equities under this test, no single factor is determinative.   See Dataphase, 640 F.2d at 113; Kansas City Southern, 126 F.3d at 1066.  Rather, all of the factors must be balanced to determine whether to grant the injunction.  International Ass'n of Machinists v. Schimmel, 128 F.3d 689, 692 (8th Cir. 1997); Marion v. Hazelwood Farms Bakeries, Inc., 969 F. Supp. 540, 542 (E.D. Mo. 1997).[2]

---

[2] [A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.   A party thus is not required to prove his case in full at a preliminary injunction hearing.  University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Because the preliminary injunction is used when "quick action is necessary to prevent irreparable harm" some "leniency" is granted at the preliminary injunction stage.  Federal Savings & Loan Insurance Corp. v. Dixon, 835 F.2d 554 (5th Cir. 1987).  As one leading commentator explains:  "[I]nasmuch as the grant of preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be had."  11 C. Wright & Miller, Federal Practice & Procedure § 2949 at

In this case, the equities favor the issuance of preliminary relief which will enable Ms. Hemberger to continue receiving Section 8 assistance, port her Voucher to St. Charles, Missouri and enjoin LCPHA and NECAC from terminating her Section 8 assistance on the basis of arrests alone and without a preponderance of evidence presented at the hearing that the participant engaged in any criminal activity.

## II. PLAINTIFF HAS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER THE UNITED STATES HOUSING ACT AND ITS IMPLEMENTING REGULATIONS WHICH SHE MAY ENFORCE UNDER 42 U.S.C. § 1983.

Plaintiff Hemberger claims that Defendants have violated her rights under 42 U.S.C. §§ 1437d(k) and 24 C.F.R. §§ 982.553 et seq and 982.54 et seq, by terminating her Section 8 assistance based on arrests alone as evidence of criminal activity and without a preponderance of evidence demonstrating the alleged criminal activity occurred and by adopting Administrative Plans that violate HUD's regulations on the termination of a participant's Section 8 assistance.

Ms. Hemberger brings these claims under 42 U.S.C. § 1983 - a remedial device that a plaintiff may invoke to redress violations of federal statutes and their implementing regulations by state actors.  <u>Maine v. Thiboutot</u>, 448 U.S. 1, 7-8 (1980).

There are two essential elements to a § 1983 claim – (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the

---

471.  Hence, affidavits and other hearsay materials are often received in preliminary injunction proceedings. See <u>Asseo v. Pan American Grain Co., Inc.</u>, 805 F.2d 23, 26 (1st Cir. 1986).

United States.  Parratt v. Taylor, 451 U.S. 527, 535 overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

### *Defendants are state actors*

Courts have consistently treated the "under color of state law" element of § 1983 as the same thing as the 'state action' required under the Fourteenth Amendment. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).  In both instances the question is whether the alleged infringement of federal rights is fairly attributable to the State. Id.

In Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) the Supreme Court held that municipalities and local government units were "persons" to whom § 1983 applied and that "[l]ocal governing bodies…[could] be sued directly under § 1983 for monetary, declaratory, or injunctive relief where …the action that is alleged to be unconstitutional implements a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690.

Defendants St. Charles County and LCPHA are local government units.  LCPHA is a joint commission created by a formal agreement between the Missouri counties of Lincoln, Macon, Monroe, Pike, Ralls, Randolph, Shelby and Warren to apply for and receive funds from the United States Department of Housing and Urban Development ("HUD").  Complaint ¶10.  Multiple courts have held that held that the activities of PHA's, like the LCPHA and the County of St. Charles (which acts through its "St. Charles County Housing Assistance Program" ("SCHAAP")), constitute state action.  See Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180 (6th Cir. 1984); Swann v. Gastonia Housing Authority, 675 F.2d 1342 (4th Cir. 1982); Billington v. Underwood, 613 F.2d 91 (5th Cir. 1980); Chavez v. City of Santa Fe Housing Authority, 606 F.2d 282, 283

n.3 (10th Cir. 1979); <u>Escalara v. New York City Housing Authority</u>, 425 F.2d 853 (2d Cir. 1970), cert denied, 400 U.S. 853 (1970); <u>Ferguson v. Metropolitan Dev. and Housing Agency</u>, 485 F.Supp 517 (M.D. Tenn. 1980); <u>Brezina v. Dowdall</u>, 472 F.Supp. 82 (N.D. Ill. 1979); and <u>Staten v. Housing Authority of City of Pittsburgh</u>, 469 F.Supp. 1013 (W.D. Pa. 1979).  Defendants LCPHA and the County of St. Charles (through its commission SCCHAP), therefore, are a "person" subject to suit under § 1983.

With respect to the non-profit corporation NECAC, the question of state action turns on whether "there is such a 'close nexus' between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." <u>Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 (2001) quoting <u>Jackson v. Metropolitan Edison Co</u>., 419 U.S. 345, 351 (1974). "[A] nominally private entity" [may be treated as a state actor] "when it is 'entwined with governmental policies' or when government is 'entwined in [its] management or control'". <u>Brentwood</u>, 531 U.S. at 296 quoting <u>Evans v. Newton</u>, 382 U.S. 296, 299 (1966), "or…is controlled by an 'agency of the State'" <u>Id</u>. quoting <u>Pennsylvania Board of Directors of City Trusts of Philadelphia</u>, 353 U.S. 230, 231 (1957) or "when it has been delegated a public function by the State." <u>Brentwood</u>, 531 U.S. at 296.

In the case at issue,  HUD has contracted with LCPHA and St. Charles County to administer the Section 8 Voucher program for their respective jurisdictions, and they in turn have contracted with Defendant NECAC to the administer the Section 8 Voucher Program on their behalf.  Consequently, NECAC is "entwined with" the policies of LCPHA and St. Charles County d/b/a SCHAAP and/or LCPHA and St. Charles County

d/b/a SCHAAP are "entwined with" NECAC's management or control.  Brentwood, 531 U.S. at 296.

### 42 USC §§ 1437d(k) and 24 C.F.R. §§ 982.55, 982.553 and 982.555 create enforceable rights

The second element of a § 1983 claim focuses on the availability of § 1983 to enforce the alleged statutory violation.  The Supreme Court has established a two-step analysis.  Blessing v. Freestone, 520 U.S. 329, 340-41 (1997).  See also Arkansas Medical Society, Inc. v. Reynolds, 6 F.3d 519, 525 (8th Cir. 1993).  The first inquiry focuses on whether the federal law in question creates enforceable rights within the meaning of § 1983.  If the provision does create such rights, the second prong then looks at whether Congress in the statute foreclosed private enforcement of those rights.

The Supreme Court has identified three factors traditionally considered in analyzing whether a particular statutory provision and its accompanying regulations give rise to a federal right.  Blessing, 520 U.S. at 340.  First, Congress must have intended that the provision in question benefit the plaintiff. Id.  Second, the asserted right must not be so vague or amorphous that its enforcement would strain judicial competence.  Id. at 340-41; see also Arkansas Medical Soc'y, 6 F.3d at 523.  Finally, the provision must be "couched in mandatory rather than precatory terms," imposing a binding obligation instead of simply reflecting a congressional preference for certain conduct.  Id. at 341; see also Wilder, 496 U.S. at 509.

### Congress intended for 42 U.S.C. § 1437d(k) and 1437f  to benefit tenants

In the pre- Gonzaga case of Wright v. City of Roanoke Redevelopment & Housing Authority, 479 U.S. 418 (1987), the Supreme Court addressed the use of § 1983 in conjunction with the United States Housing Act (the "Housing Act").  There, families in

the Housing Choice Voucher Program challenged public housing authorities' utility charges as a violation of the Brooke Amendment.  Id. at 419.   The Court held that Congress intended for the complaining tenants to have an enforceable right under the Housing Act to challenge the calculation of a utility allowance schedule. Id.

Subsequent to Gonzaga, the 8th Circuit has continued to recognize that "certain provisions of the Housing Act provide rights that are enforceable under § 1983." Hunter v. Underwood, 362 F.3d 468, 478 (8th Cir. 2003).   The provision at issue here - 42 U.S.C. § 1437d(k) - mandates that HUD provide by regulation that PHA's provide tenants with certain procedural rights should a PHA decide to terminate a subsidy. The language of this statute unambiguously confers rights for the benefit of Section 8 assistance participants.[3]

One of the rights conferred by §1437d(k) is that the tenant "be entitled to receive a written decision by the public housing agency on the proposed action." 42 U.S.C. §1437d(k)(6).   The HUD regulations clarify what constitutes a proper written decision by specifying that a hearing officer must "stat[e] briefly the reasons for the decision" and that "factual determinations…shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

Section 1437d(k) and its implementing regulations are couched in "mandatory rather than precatory terms." Blessing, 520 U.S. at 341.  Finally, 42 U.S.C. § 1437d(k) is not so "vague and amorphous that its enforcement would strain judicial competence." Id. at

---

[3] § 1437d(k) specifies that:  "The Secretary shall by regulation require each public housing agency receiving assistance…to establish and implement an administrative grievance procedure under which tenants will: (1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity for a hearing before an impartial party upon timely request…; (3) have an opportunity to examine any documents or records or regulations related to the proposed action; (4) be entitled to be represented by another person of their choice at any hearing; (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and (6) be entitled to receive a written decision by the public housing agency on the proposed action."

340-41.  Indeed, courts are uniquely suited to addressing the procedural rights guaranteed

Section 8 assistance participants by 42 U.S.C. § 1437d(k).

### *Congress did not foreclose enforcement of § 1437d(k) under § 1983*

The second prong of the enforceability analysis looks at whether Congress

foreclosed enforcement of § 1983 in regard to the federal right in question.   As the

Blessing Court explained, when a plaintiff demonstrates that a federal statute creates an

individual right, it gives rise to a rebuttable presumption that the right is enforceable under

§ 1983. 520 U.S. at 341.   The burden then shifts to the defendant to prove "by express

provision or other specific evidence from the statute itself that Congress intended to

foreclose such private enforcement." Wright, 479 U.S. at 423.

There is no indication that Congress intended to foreclose tenants from enforcing

their rights under 42 U.S.C. § 1437d(k) through § 1983.  In Wright, the Court rejected the

argument that HUD had exclusive authority to enforce the Brooke Amendment explaining

that such a holding was "at odds" with the enactment of the 42 U.S.C. § 1437d(k)

grievance procedures to resolve tenant disputes. 479 U.S. at 426.   "HUD itself has never

provided a procedure by which tenants could complain to it about the alleged failure of

PHA's to abide by … HUD regulations; nor has it taken unto itself the task of reviewing

PHA grievance procedure decisions."  Id.   In Gonzaga University, et al v. Doe, the Court

reasoned that the lack of a sufficient federal review mechanism permitting tenants to

complain of purported non-compliance weighed against a conclusion that Congress

intended to preclude enforcement under § 1983. 536 U.S. 273, 290 (2002).

It would be anomalous if tenants could contest their rent and utility charges (under

the Brooke Amendment) through § 1983 but could not challenge their right under §

1437d(k) not to be arbitrarily terminated from the Section 8 Voucher Program.   As a result, multiple courts have concluded that violation of §1437d(k) and its implementing regulations are enforceable under § 1983.  See Gammons v. Massachusetts Department of Housing and Community Development, 523 F. Supp. 2d 76, 85 (D. Mass. 2007) (recognizing cause of action under § 1983 to challenge the sufficiency of evidence supporting defendant's decision to terminate the plaintiffs' Section 8 subsidy); Stevenson v. Willis, 579 F. Supp. 2d 913, 921-23 (N. D. Ohio 2008) (tenant's right not to be arbitrarily terminated from Section 8 Voucher program enforceable under § 1983);  Loving v. Brainerd Housing and Redevelopment Authority, No. 08-1349,  2009 U.S. Dist. LEXIS 8664 (D. Minn. Feb. 5, 2009) (tenants who alleged the defendant PHA violated 24 C.F.R. § 555 (e)(6) by terminating their assistance under the Section 8 Voucher Program based on factual determinations that were contrary to the preponderance of the evidence stated a claim for relief under § 1983);  Basco v. Machin, 514 F.3d 1177, 1180-84 (11th Cir. 2008) (reversing summary judgment for PHA and finding in favor of plaintiff on § 1983 claim alleging violations under 24 C.F.R. § 982.555(e)(5) and (6) where hearing officer relied upon "legally insufficient evidence" to terminate plaintiff's Section 8 assistance); Fields v. Omaha Housing Authority, 8:04CV554, 2006 U.S. Dist. Lexis 10043 at p. 4 (D. Neb. January 23, 2006) (violation of regulation adopted pursuant to § 1437d(k) is actionable under § 1983);  accord Morse v. Philadelphia Housing Authority, No. Civ. A 03-CV-814, 2003 U.S. Dist. LEXIS 15541 (E.D. Pa. Aug. 12, 2003); Conway v. Housing Authority of City of Asheville, 239 F. Supp. 2d 593, 598-99 (W.D. N.C. 2002); Saxton v. Housing Authority of City of Tacoma, 1 F.3d 881, 883-84 (9th Cir. 1993); Farley v. Philadelphia

Housing Authority, 102 F.3d 697, 702-04 (3d Cir. 1996); Samuels v. District of Columbia, 770 F.2d 184, 193-98 (D.C. Cir. 1985).

***The hearing decision terminating Plaintiff's Section 8 assistance violated Plaintiff's rights under §1437d(k) and 24 C.F.R. §982.555(e)(6) because it was not based on the preponderance of the evidence presented at the informal hearing***

Defendants have violated Plaintiff Hemberger's rights under 42 U.S.C. § 1437d(k), 24 C.F.R. § 555(e)(6) and 42 U.S.C. § 1983 because the hearing officer's September 26, 2011 decision terminating her Section 8 assistance is based on "legally insufficient evidence" to establish that Ms. Hemberger engaged in any criminal drug-related activity.

42 U.S.C. § 1437d(k) mandates that HUD provide by regulation that PHA's provide tenants with certain procedural rights should a PHA decide to terminate a subsidy. These procedural rights include, inter alia, the right to an informal hearing prior to the actual termination of assistance and the requirement that the hearing officer's determination be "based upon a preponderance of the evidence presented at the hearing." 24 C.F.R. §§ 982..555(c)(2) and 982.555(e)(6).  When a PHA seeks to terminate a particpant's assistance on the grounds of drug-related criminal activity, the PHA must determine "based on a preponderance of the evidence, that the household member has engaged in the activity…." 24 C.F.R. § 982.553(c).

Therefore, a PHA seeking to terminate a participant's assistance has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case. See Basco v. Machin, 514 F.3d 1177, 1182 (11th Cir. 2009); Gammons v. Massachusetts Department of Housing and Urban Development, 523 F. Supp. 2d 76 (D. Mass. 2007).

In <u>Basco</u>, the court found the housing authority failed to meet its burden of proof when it relied solely on two unauthenticated police reports as the basis for terminating the participant's Section 8 assistance. 514 F.3d at 1183.

Here, the Defendants failed to produce even police reports.  Instead the hearing officer's decision relies solely upon the Arrest Record. <u>See</u> Declaration ¶ 23, Exh C.  This Arrest Record states that there are no convictions and, at best, shows only that Ms. Hemberger was arrested.   The hearing officer wrongly shifted the burden of proof to Ms. Hemberger when he ruled that she "did not provide any evidence other than her denial, that the [arrest] charges were entered in error."

Under these circumstances, the September 26, 2011 decision upholding the termination of Ms. Hemberger's Section 8 assistance was unlawful, arbitrary, capricious and not based on a preponderance of the evidence as required by §1437d(k) and 24 C.FR. § 982.555(e)(6).  Indeed, there was an "egregious" lack of evidence of any kind.   <u>Young v. Maryville Housing Authority</u>, No. 3:09-CV-37, 2009 U.S. Dist. LEXIS 56539 at p. 6 (E.D. Tenn. July 2, 2009) (granting preliminary injunction reinstating Section 8 assistance where there was an "egregious" lack of evidence supporting hearing officer's decision).

### *The LCPHA Administrative Plan's provisions regarding termination of Section 8 assistance violate federal law*

A PHA that administers a Section 8 Voucher Program "must adopt a written administrative plan that establishes local policies for administration of the program in accordance with HUD requirements." 24 C.F.R. § 982.54(a).  The Administrative Plan "must be in accordance with HUD regulations and requirements." 24 C.F.R. § 982.54(b).

"The PHA must revise the administrative plan if needed to comply with HUD requirements." Id.

Page 15-7 of the LCPHA Administrative Plan states that "[p]articipants will be terminated who have been "[a]rrested…due to drug-related or violent criminal activity within the last three years prior to the date of the notice to terminate assistance, and whose activities have created a disturbance in the building or neighborhood." See Exh. F attached hereto.   This provision, to extent it mandates termination of assistance on the basis of an arrest,  is unlawful, because it conflicts with 24 C.F.R. § 982.553(c) which only authorizes termination for criminal activity if the PHA "determines, based on a preponderance of the evidence, that the household member has engaged in the activity…" An arrest alone does not demonstrate by a preponderance of the evidence that criminal activity occurred.

***Defendant St. Charles County and NECAC have violated Plaintiff's rights under 42 U.S.C. § 1437f(r) and its implementing regulations by refusing Plaintiff's request to port her voucher to St. Charles County***

One of the key features of the Section 8 Voucher Program is the mobility of the assistance. Participants may choose a unit that meets program requirements anywhere in the United States. 42 U.S.C. § 1437f(r).  When a family receiving Section 8 assistance moves to an area outside the initial PHA's jurisdiction, another PHA (the "receiving PHA") must administer assistance for the family if the receiving PHA has a tenant based program in the area where the unit is located. 24 C.F.R. § 982.555(a) (emphasis added). "The receiving PHA does not redetermine eligibility for a portable family that was already receiving assistance in the initial PHA's Section 8 tenant-based program…" 24 C.F.R. § 982.355(c)(1).  "[The] receiving PHA must provide assistance for the family.  Receiving

PHA procedures and preferences for selection among eligible applicants do not apply and the receiving PHA waiting list is not used." 24 C.F.R. § 982.355(c)(10).

A receiving PHA may make a determination to deny or terminate assistance. However, this determination must comply with the regulations discussed above. 24 C.F.R. § 982.355(c)(9).

In the instant case, Plaintiff applied to port her Voucher to St. Charles after she found a dwelling there and the prospective landlord had approved her.  See Declaration ¶¶ 12 – 15.  On August 31, 2011, NECAC acting on behalf of St. Charles County (the receiving PHA)  denied her request to port her Voucher to St. Charles on the same grounds that NECAC terminated her assistance under the LCPHA Plan – the April 29, 2011 and June 17, 2011 arrests for alleged drug possession.  See Declaration ¶¶ 12, 23 and Exhs A and C.

As explained above, Defendants have not shown by a preponderance of the evidence that Plaintiff engaged in any criminal drug-related activity. By refusing Ms. Hemberger's request to port her Voucher, Defendant St. Charles County and NECAC have violated Plaintiff Hemberger's rights under 42 U.S.C. § 1437f(r), 24 C.F.R. § 982.555(a) 24 C.F.R. § 555(e)(6) and 42 U.S.C. § 1983.

> **B.     DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHICH SHE MAY ENFORCE UNDER § 1983**.

The same acts and omissions of Defendants described above also violated Plaintiff Hemberger's rights under the Due Process Clause of the Fourteenth Amendment to the

United States Constitution.  By its terms, 42 U.S.C § 1983 affords a remedy to individuals whose rights under the United States Constitution have been violated.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1.  The elements of the due process claim are (1) state action, (2) denying a protectable property interest (3) without due process.  Board of Regents v. Roth, 408 U.S. 564, 569-570 (1972); Joy v. Daniels, 479 F.2d 1236, 1238-40 (4th Cir. 1973).

As explained above, the analysis for state action under § 1983 and the Fourteenth Amendment are the same.  See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).  State action exists here for the reasons previously cited.

There is also little question that Section 8 Voucher Program participants have a protectable interest in their Section 8 assistance. Swann v. Gastonia Housing Authority, 675 F.2d 1342, 1346 (4th Cir. 1982); Lowery v. District Of Columbia Housing Authority, 2006 U.S. Dist. LEXIS 13319, 20 (D.D.C. 2006); Holbrook v. Pitt, 643 F.2d 1261, 1277 (7th Cir. 1980); Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180, 184 (6th Cir. 1984); Basco v. Machin, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008).  See also Kapps v. Wing, 404 F.3d 105 (2d Cir. 2005) ("high importance" when erroneous termination of HEAP benefits would leave household without heat).

Finally the "due process" required under the 14th Amendment before a Section 8 Voucher participant's assistance may be terminated are those rights codified in § 1437d(k) and its implementing regulations.   These grievance hearing procedures were established to meet the requirements of Goldberg v. Kelly, 397 U.S. 254 (1970).  See Clark v. Alexander, 85 F.3d 146,150 (4th Cir. 1996); Edgecomb v. Housing Authority of Town of Vernon, 824

F. Supp. 312, 314 (D. Conn. 1993) (both citing 55 Fed. Reg. 28538, 28541 (July 11, 1990)); Stevenson v. Willis, 579 F.Supp.2d 913, 919 (N.D. Ohio 2008).

In Goldberg, the Supreme Court made clear that "where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases" they are entitled to fundamental due process rights. Id. at 268.  These rights, include, inter alia, "timely and adequate notice detailing the reasons for a proposed termination" (Id. at 267-268) and a decision based solely on the "legal rules and evidence adduced at the hearing" which sets forth the reasons for the decision and indicates the evidence relied upon.  Id. at 271. [4]

"The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558 (1974).  Here, as explained above, the decision is not based upon the preponderance of the evidence adduced at the hearing but instead on insufficient evidence of drug-related activity bolstered by an illegal provision in the LCPHA Administrative Plan.  Defendants' arbitrary misapplication of the federal regulations and 42 U.S.C. § 1437d(k) and its improper reliance on the arrests as the basis for the termination of Ms. Hemberger's Section 8 assistance violate Ms. Hemberger's due process rights.  See Young v. Maryville Housing Authority, No. 3:09-CV-37, 2009 U.S. Dist. LEXIS 56539 at p. 6 (E.D. Tenn. July 2, 2009); Gammons v. Massachusetts Department of Housing and Community Development, 523 F. Supp. 2d 76, 84 (D. Mass. 2007); Miller v. McCormick, 605 F. Supp. 2d 296, 313-14 (D. Maine 2009) (denying PHA's motion for summary judgment on plaintiff's § 1983 claim that the

---

[4] The other rights include "an effective opportunity to defend by confronting any adverse witnesses and by presenting his [the recipients] own arguments and evidence orally", the "right to retain counsel if the recipient so desires", and an "impartial decision maker." Goldberg, 397 U.S. at 268, 271.

defendant violated his due process rights when it terminated his voucher on grounds that plaintiff was a lifetime registrant); Basco v. Machin, 514 F.3d. 1177, 1184 (11th Cir. 2008).

### C.    DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER THE MISSOURI ADMINISTRATIVE PROCEDURE ACT.

Plaintiff Hemberger also has an enforceable right under the Missouri Administrative Procedure Act, Mo. Rev. Stat. § 536.150 to challenge the decision of Defendants to terminate her Section 8 assistance and deny her request to  port her Voucher to St. Charles County.

The Missouri Administrative Procedure Act ("APA") authorizes judicial review of agency decision by suits for injunction or other appropriate action when there is no other provision for review of such decision.  Mo. Rev. Stat. § 536.150 (2000).  In such an uncontested case, the court may determine whether an agency's challenged action was unconstitutional, unlawful, unreasonable, arbitrary or capricious, or involves an abuse of discretion.  Id. A reviewing court which finds the agency action unconstitutional, unlawful, unreasonable, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law can hold unlawful and set aside the agency action.

In State ex rel. Smith v. Housing Authority of St. Louis County, 21 S.W.3d 854 (Mo. App. 2000), a Section 8 tenant invoked the Missouri APA to enforce her federal rights against the PHA.  Similar review of Defendants' action is available here.

In Housing Authority of St. Louis City v. Boone, the Missouri Court of Appeals held that HUD has broad rule-making authority and rules established by HUD are binding on participating housing authorities. 747 S.W. 2d 311, 314 (Mo. App. 1988).  As demonstrated above, Defendants were in clear violation of the regulations when they relied on arrests alone as "sufficient evidence" of drug-related activity.  The federal regulations

clearly require a PHA determine by a preponderance of the evidence the drug-related activity occurred in order to terminate a participant's Section 8 assistance.  24 C.F.R. §§ 982.553(c) and 982.555(e).

Further Defendant St. Charles County has violated its own Administrative Plan, Page 12-9, which specifically requires that a decision to terminate assistance must be based upon a preponderance of the evidence. As noted on Page 12-9 of the SCCHAP Administrative Plan, "*[p]reponderance of the evidence* is defined as evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not.  Preponderance of the evidence may not be determined by the number of witnesses, but by the greater weight of all evidence."

The only evidence presented at the informal hearing was the Arrest Record, which demonstrated only that Ms. Hemberger was arrested.  The evidence "as a whole" did not demonstrate Ms. Hemberger committed drug related activity.  Defendant St. Charles County acted arbitrarily and unlawfully when it failed to abide by its own Administrative Plan as required by due process and 24 C.F.R. § 982.54.

### III.    PLAINTIFF WILL SUFFER IRREPARABLE HARM

Plaintiff Hemberger will suffer irreparable harm if Defendants are permitted to terminate her Section 8 assistance.  Since Ms. Hemberger's sole income is TANF, the termination of her Section 8 assistance will eventually result in eviction and probable homelessness.  Involuntary displacement from one's home is *per se* irreparable harm. Lancor v. Lebanon Housing Authority, 760 F.2d 361, 363 (1st Cir. 1985); Johnson v. United States Department of Agriculture, 734 F.2d 774, 789 (11th Cir. 1984).

22

## IV.    THE BALANCE OF HARDSHIPS TILTS STRONGLY IN FAVOR OF PLAINTIFF

Balancing the equities of Ms. Hemberger's need for Section 8 assistance with the Defendants' ability to continue providing Section 8 assistance for the limited time needed to resolve the claims on the merits strongly favors granting injunctive relief.

## V.    THE PUBLIC INTEREST WOULD BE BEST SERVED BY GRANTING INJUNCTIVE RELIEF

Finally, the public interest and public policy weigh in favor of injunctive relief.  If Ms. Hemberger's claims that her Section 8 assistance has been terminated in violation of federal law are true, the public interest in the Section 8 Voucher Program being administered in compliance with federal law would be furthered by maintaining the status quo and allowing her an opportunity to present in court her arguments.

## VI.    BOND SHOULD NOT BE REQUIRED SINCE THE DEFENDANT IS   ADEQUATELY PROTECTED AND THE PLAINTIFF IS INDIGENT.

Numerous federal courts interpreting Fed. R. Civ. P. 65(c) have held that because the amount of security is a matter for the discretion of the trial court, the court may "elect to require no security at all" even though the language of Rule 65(c) appears to be mandatory.  KAEPA, Inc. v. Achilles Corporation, 76 F.3d 624, 628 (5th Cir. 1996).  See also Moltan Company v. Eagle Picher Industries, Inc., 55 F.3d 1171, 1176 (6th Cir. 1995). Hence, where plaintiffs are indigent, some federal courts have waived bond on the ground that to require it would effectively deny access to judicial review for indigent people.  See, e.g., Brown v. Artery Organization, Inc., 691 F.Supp. 1459, 1462 (D.D.C. 1987); Wayne Chemical, Inc. v. Columbus Agency Service Corp., 567 F.2d 692, 701 (7th Cir. 1977);

Denny v. Health and Social Services Board, 285 F.Supp. 526, 527 (E.D. Wis. 1968); and Orantes Hernandez v. Smith, 541 F. Supp. 351, 385 n.42 (C.D. Cal. 1982).

Other federal courts interpreting Fed. R. Civ. P. 65(c) have dispensed with the necessity of a bond where the injunction raises no risk of monetary harm to the defendant or the defendant possesses adequate security against damages arising from the injunction. See, e.g., Lopez v. Delta Funding Corp., 1998 WL 1537755 (E.D. N.Y., Dec. 23, 1998); Thomas v. F.F. Financial, Inc., 1989 WL 37658 (S.D.N.Y. April 12, 1989); International Controls Corp. v. Vesco, 490 F.2d 1334, 1356 (2d Cir. 1974), cert. denied, 417 U.S. 932 (1974).

Plaintiff Hemberger is a single mother with income of only $336 per month. If she is required to post a large bond, she will not be able to seek injunctive relief.   Therefore, Ms. Hemberger should not be required to post bond.

### D.   CONCLUSION

This Court should grant Plaintiff Hemberger's motions for preliminary relief and enjoin Defendants to immediately reinstate Ms. Hemberger's Section 8 assistance effective immediately retroactive to October 1, 2011, and permit her to port her Voucher to St. Charles, Missouri.  Plaintiff further requests that this Court enjoin Defendants LCPHA and NECAC from enforcing LCPHA's Administrative Plan to the extent that it mandates the termination of Section 8 assistance on the mere basis of an arrest and without a determination based on a preponderance of the evidence that the participant has engaged in any criminal activity.

Respectfully submitted:


LEGAL SERVICES OF EASTERN
MISSOURI, INC.


By /s/ *Daniel E. Claggett*_____
     Daniel E. Claggett ED#26982MO
     Susan M. Alverson ED#35109MO
     Kevin Suffern ED#39809MO
     Melissa Bancroft ED#61627MO

     4232 Forest Park Ave.
     St. Louis, MO 63108
     Telephone:  314-534-4200
     Facsmile:  314-534-1028
     declaggett@lsem.org
     smalverson@lsem.org
     kasuferrn@lsem.org
     mcbancroft@lsem.org

ATTORNEYS FOR PLAINTIFF